Good morning. Tracy Dressner for Petitioner Kristen Hardy. I want to start with, so this is a case involving an ineffective assistance to counsel claim regarding a rejected plea. And I want to focus first on what happened in state court. We only have one reasoned, quote unquote, reasoned ruling from the state court, and that was from the Superior Court, which in a preprinted form just said essentially there was no prejudice proven. And that has two significance, two points of significance. The first is that the performance prong of the ineffective assistance counsel is reviewed de novo because we don't have a merits ruling on performance. And the second is that we don't know what the grounds were for why the defendant's claim was rejected. So we have to look at the record and see if there is a sufficient basis in the record. Does it really matter if the judge said I find X or I find Y? If we can look at the record and see that there's a basis for such a finding, does it matter? Under the AEDPA, no. But what I'm going to discuss now is that there's no basis for making that finding on the record. What we have is in Loffler, the United States Supreme Court case, it says there are four factors that you look at when you have an ineffective assistance counsel based on a rejection of a plea offer. And the first is would the sentence have been less severe? And that one here, it's easy. Mr. Hardy was offered a four-year deal. He didn't know at that time, he thought, based on what his counsel, what his attorney had been facing, nine years. In fact, he was facing a third strike and he was sentenced to 25 years to life. So the disparity between four years and 25 to life, that factor certainly supports him. The second is would the court have accepted those terms? The district court made findings of fact, which are fully supported by the record, that in this case the trial court had not only encouraged Mr. Hardy to take the deal, but he had also offered continuances in the case so that the plea could be discussed further. And so it certainly was clear that the court was supportive of this. The third is whether the prosecutor would have withdrawn the plea in light of intervening circumstances. Now, there's nothing in the record to support that the prosecutor would have withdrawn the plea had Mr. Hardy accepted it. There's nothing in the record that definitively whether the prosecutor knew that Mr. Hardy had a second strike. Is there anything in the record that indicates that the government knew, the prosecution knew that he had that second strike? There's nothing that indicates whether they did or they didn't, but we have a situation where this was the Riverside DA's office, both of Mr. Hardy's convictions, the one that was alleged as a strike and the one that was later alleged as a strike, were both But when you have a case where you're making your allegations, how hard could it be to run somebody's name in your system? Is there any indication in the record that defense counsel somehow was derelict in his responsibility to inquire and get the rap sheet from the district attorney? Well, I think, yes. Because I see here a reference in the record that defense counsel said, I email Sherry Dyson, who's the DA in the case, can you please give me the chart report? Is that an indication to you that the defense counsel was asking for the rap sheet? Your Honor, I believe that is the subsequent counsel, long after the plea had been withdrawn. That was at the point, I believe that was at the point That was at the Marsden hearing, December 2005. So here's what I need your help with. It seems to me, from looking at this factual record, that the DA didn't have the rap sheet, or at least the rap sheet wasn't accurate, as far as I can tell. The packet indicating the strikes from the Department of Corrections didn't come in until at least March of 2006. There's an indication that at the December 2005 hearing, as of that date, the defense counsel was asking for the chart report, and it says here she has not now been able to obtain that. So it seems to me the DA didn't know that there were two strikes instead of one. The defense counsel hadn't obtained an accurate rap sheet, and so the defense counsel didn't know that there were two strikes. How is that deficient performance when the defense counsel relies on the district attorney to turn over an accurate rap sheet? Well, the defense counsel hasn't. We have in the Riggs case, which I know is not, it's technically not still good law, although it's cited by this court and the United States Supreme Court and other courts for its proposition that trial attorneys, when there are strike allegations, have an obligation, when there's a plea offer, to make sure that they understand what their defendant's, what their client's, sentencing exposure is. And again, we have the... But do they have an independent access to the law enforcement and government databases that would uncover an accurate rap sheet? Well, you don't actually need a rap sheet. I could go and pull Mr. Hardy's name up in the Riverside online in the public and find what he's been convicted of. And here we have a situation where his attorney was a public defender. The Riverside Public Defender's Office had represented Mr. Hardy in the parole revocation hearing that was the, I'm sorry, a probation revocation, that was a probation revocation from the case that was the second strike. So we're talking about Riverside DA, Riverside Public Defender, being able to look in their own system and find out what convictions there are. Can I interrupt you for just a second? What evidence is there in the record that a defense lawyer like Mr. Zaks could have or should have found the information about the second strike? Do we have a declaration from some lawyer that says, hey, I went and I looked at it and guess what, I found it in 15 minutes or something to that effect? We don't, but we have no evidence to the contrary either. And again, convictions are easily available. Well, but that's sort of, I mean, that's argument. That's not really evidence in the record, is it? How can a trial attorney advise, properly advise their client about a plea unless they know their client's full sentencing exposure? But isn't it, the benefit of the bargain is this, and it happens, as you know, I'm a trial court judge, right? So this happens all the time where we make a deal, and the deal is, look, you're going to surrender certain things, you're going to give up certain rights in exchange for which we're going to give you this deal. But the deal has to be accepted within a certain period of time, in this case, the preliminary hearing. So the defendant essentially says, okay, fine, I'm willing to take the risk, I'll give up whatever rights I have, but I am being offered this particular deal, I'm either willing to take it or reject it. And that's what happened in this case, isn't it? Yes, but he only had what the United States Supreme Court said in Lee, is that there are two factors that clients take into account. One is, what's their likelihood to prevail at trial? And the other is, what are they risking? And in this case, Mr. Hardy believed he was risking only nine years. He did not know that he was risking 25 years to life. How does that square with his conversation with Ms. Malone, wherein he says, I'm looking at 37 years, and then another time he says, I'm looking at life? How does that square? He says, I believe, like eight or nine times 37 to life, and then he says 37 years, and then at one time he calls it life. But the difference is between a determinant sentence, two things. One is a determinant sentence where you know you're going to get out one day, and an indefinite life term where you could potentially be spending the rest of your life in prison. The other is that it's a conviction of all of his counts would have been 37 years, whereas he believed, based on his attorney's recommendation, that he was really only facing a risk most certainly of the corporal injury conviction, and in fact, he was acquitted of three of the five charges, and the assault and the corporal injury were the similar, one was stayed because they were the similar incident. So his analysis was correct. He was really weighing one conviction, but he believed he was facing nine years, and he was really facing 25 to life. And he said, has said multiple times under the penalty of perjury that he would have taken the deal if he'd known he was facing an indefinite life term. We have his parents' declarations under the penalty of perjury that if they had known, they would have forced him, encouraged him to take that deal, and we have his actual trial attorney, the attorney who replaced him. Even if all that is true, I think as Judge Benitez pointed out, what's missing in the record is what defense counsel could have done about it. Mr. Hardy made an allegation that his trial counsel should have done it. If there's a question of fact about it, then the case should be remanded for an evidentiary hearing to settle just exactly that point. I think I'm out of time, unfortunately. Yes, questioning took you over your time. Does Judge Gould have any questions before you sit down? No questions here.  Thank you. I'll put a minute on the clock for rebuttal. Thank you. I appreciate that. Morning, Your Honors. Michael Butera for Respondent, and may it please the Court. The State Court reasonably applied the prejudice prong of Strickland because Appellant would not have accepted the plea deal had his trial counsel been aware of his second strike. What the record reveals is that Appellant, who was on notice that he was facing more than three decades of incarceration, chose to disregard the advice of both his trial counsel and the trial court in rejecting the four-year offer. And we see that that decision was motivated not by the difference between one and two strikes, but by his belief, mistaken belief that the victim would recant her accusations and that as a result, he would be exonerated of all of his crimes. I believe that the most crucial piece of evidence that gives us a window into the April of 2006 jailhouse calls between Appellant and the victim. And from this, we learn two key facts. First, Appellant explicitly stated that he would have taken the four-year deal had he known that she intended to continue to testify against him at the preliminary hearing, and that at that time, he believed that without her testimony, the prosecution had no evidence and that he would defeat all of the charges. But, but, but given, given the fact that Mr. Hardy says that no, that he would have taken the deal regardless, had he known this, this would require an evidentiary hearing for the, for the judge to decide whether he would have, or he would not have taken it. Right. I disagree, Your Honor. Under EDPA, the state court's determination of the facts based on the record has to be an agreement in order to be re-litigated in federal court. I believe that based upon the record, there was not an unreasonable determination of the facts because of the fact that the, the jailhouse call gives us a better idea of what his thought process and his motivations were at the time than a declaration in hindsight, having seen the results of the gamble. Can you address the performance prong? Is there any indication that defense counsel could have independently obtained the, an accurate record of his criminal history? There isn't any evidence in the record, Your Honor. I believe that even under a DeNovo review of Strickland, there was no deficient performance because there was simply no way that the trial counsel would have been on notice that there was any problem with the criminal history as charged by the prosecution. There was no indication that there was any further investigation that was necessary and counsel provided competent, legally correct advice based on the facts as he reasonably understood them and gave sound advice that the four-year offer was an extremely good deal that appellant should take. It appears from the record that, I'm sorry, I'm sorry, Judge Gould. Go ahead. Judge Gould on the phone. My question here for the government is, what is the significance of the fact that the defense lawyer is taking the, taking the four-year deal? How is that significant? Oh, Your Honor, the fact that the, that the advice was to take the four-year deal was a proof of competency based on the exposure that appellant was facing and the, it also gives us an insight into the prospects and risks of success at trial. I think the fact that he had been able to secure an extremely favorable deal and correctly advised him to take it distinguishes this case materially from something like Riggs. Sorry, Your Honor. Oh, and. He says he had a question. What I was going to ask you was, it appears from the record that the prosecution didn't even know that the second strike existed until much, much later, and the subsequent information was filed. That's correct, Your Honor. It looks like at the very earliest it could have been discovered sometime in March of 2006. The complaint was not amended to allege a strike until August of 2006. We don't have any indication of whether the prosecution was aware of it, which is also a significant portion of the timing. If I can quickly go back to prejudice, because what the April 2006 jailhouse call reveals is that appellant, after the preliminary hearing, had actually attempted to take the four-year deal before the information had been amended to allege the second strike, which shows us that it is not the second strike that's the determinative factor, but rather it was the realization that the victim intended to testify against him consistent with her accusations as reported to police. Given that there's nothing in the record that indicates that competent counsel would have been able to find that second strike and thereby advise his client to take the deal as a result of the subsequent exposure, how would we define the parameters that effective counsel should engage in, in order to not be found to be ineffective? In other words, what do we say? Do we say that defense counsel must, I don't know, go down to every county recorder's office in the state and look to see if the defendant has a conviction? I mean, how do we fashion the parameters? Do you understand what I'm asking? Your Honor, yes. It's a very difficult question in terms of setting some sort of bright line. Case law has found that the duty to investigate is very particularized based on the facts of certain cases. So to say that an attorney must in all circumstances independently sort of assume that the information provided by the prosecution is incorrect, I believe rises far beyond the constitutional minimum standard of competence given Strickland's significant deference to a wide range of acceptable conduct. And there's another issue, and that is what's the responsibility of the defendant to provide accurate and accurate information to his or her counsel, isn't there? That's correct, Your Honor. In the supplemental excerpts of record, we attached the plea agreement from the 2001 strike in which appellant acknowledges that he understands that this is something that can be used against him as a strike in the future. And so finding ineffective assistance of counsel where a defendant chooses to keep quiet almost creates a perverse incentive for a defendant to withhold material information and then benefit from his counsel's lack of accurate representation on that basis. We have in the record the plea from 2001 that indicates that he was told that it's a priorable as a strike, but I didn't see the record for 2003. Is that correct or did he just miss it? Your Honor, I don't believe that it was included simply because it wasn't disputed that he knew that the 2003 strike was a strike. It was charged as a strike prior to any plea negotiations. And in the Marsden hearing, he acknowledged that he understood the doubling of his sentence and the five-year serious and violent prior felony based on the advice of his counsel. Right, right. But I was looking to see whether he was specifically advised, as you know some counties do, that a second, the first strike doubles your sentence, the second one subjects you to life. I don't recall offhand whether that information was included in the record, Your Honor. Do we know on this evidentiary record whether defense counsel relied on the way that it was charged or whether defense counsel relied on the way that it was charged coupled with an informal printed rap sheet? We don't have information into the specific reliance of counsel. I believe that it would be based on the reasonable reliance on how it was charged, but there's nothing to indicate that there wasn't an independent investigation into the rap sheet. And for these reasons, we believe that the state court reasonably applied federal law and the district court's denial of habeas relief is devoid of error and should be affirmed. If there are no further questions, I will submit on that. Thank you, counsel. Thank you, Your Honor. Okay, so much to unpack here. First of all, we have attorneys for a specific reason, because clients themselves are not tasked with the duty of understanding what the legal significance of what their convictions might be or might represent. In the 2001 plea, all he was told was that it could be, not that it would be. There's nothing in the record that says whether he ever told his attorney or he didn't tell his attorney. We have nothing in the record whether his attorney ever asked and whether he was refused. This is different than the, I believe it's the Hill United States Supreme Court case that respondent referred to where in that case the client had actually filled out a form and he said he had no prior convictions and he actually had one. There's nothing in this record that in any way supports that Mr. Hardy ever affirmatively misled anybody. To the extent that there's a question about that, then there should be an evidentiary hearing about it. Mr. Hardy made his allegations. The state court had to accept his allegations as true. If there's a factual dispute, particularly on the performance prong, it's a de novo review. This court can send it back for an evidentiary hearing. In terms of the performance, the fact that he said he would have taken the four-year deal if he'd known his girlfriend was not going to recant her testimony only tells you that there were two factors that were at risk, that he thought he had a chance of prevailing and he also weighed it against his nine-year risk. They're not separate entities that you can't mix. You have a two-fold task that you're looking at. If one of them proves wrong, you may have said I would have taken it even if I, you know, was only facing one year or a thousand years. We've got your argument, Counsel, and you're well over time. All right. Thank you. Thank you very much to both sides for your argument in this case. The matter is submitted for decision by this court.
judges: Gould, Nguyen, Benitez